*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0348p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 07-5504

MICHAEL HODSON, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 06-00117—Danny C. Reeves, District Judge.

Submitted: June 13, 2008

Decided and Filed: September 19, 2008

Before: NORRIS, BATCHELDER, and GIBBONS, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:** James E. Hibbard, LAW OFFICES, London, Kentucky, for Appellant. Charles P. Wisdom, Jr., Erin J. May, ASSISTANT UNITED STATES ATTORNEYS, Lexington, Kentucky, for Appellee.

_____

### OPINION

_____

ALICE M. BATCHELDER, Circuit Judge. In this appeal, which arises from the district court's denial of a criminal defendant's motion to suppress evidence seized pursuant to a warrant, we must decide whether a suspect's ostensibly admitting to having engaged in child molestation is sufficient, without more, to establish probable cause to search that suspect's home for child pornography. Because we conclude that it is not, we REVERSE the district court's denial of the suppression motion, VACATE the conviction, and REMAND this case for further proceedings consistent with this opinion.

### I.

On October 7, 2005, Detective Juan Passano of the Passaic County, New Jersey Sheriff's Department Internet Crimes Section, in his search for on-line sexual predators, logged onto AOL as "kidlatino12" and represented himself as a twelve-year-old boy. Once on line, Detective Passano encountered "WhopperDaddy" and conversed with him for almost an hour via AOL Instant Messenger ("IM"). During this conversation, WhopperDaddy shared certain personal information

1

— e.g., that he was a 41-year-old, married man with two sons, who lived in Kentucky. More pertinent to this case, however, is that WhopperDaddy also confided that he was a homosexual who favored young boys, liked looking at his nine- and eleven-year-old sons naked, and had even had sex with his seven-year-old nephew.[1] WhopperDaddy also expressed his desire to perform oral sex on the presumptive twelve-year-old boy (i.e., Detective Passano) and his willingness to travel to New Jersey to do so. After this seemingly anonymous conversation had ended, Detective Passano subpoenaed AOL for information concerning WhopperDaddy; the response to this subpoena revealed that Michael Hodson of Middlesboro, Kentucky, had registered that screen name, among others, including "TN_Cyclops" and "lubemyrod." On October 27, 2005, approximately three weeks after the initial (and apparently only) contact between kidlatino12 and WhopperDaddy, Detective Passano contacted Detective Jacqualine Pickrell of the Kentucky State Police Internet Crimes Against Children Task Force, to inquire about Hodson.

Detective Pickrell attempted to verify the information she received from Detective Passano, including the content of the IM conversation and the information obtained from AOL. Detective Pickrell verified Hodson's age and address, but discovered that he had only one son and no known nephews. Presumably, Detective Passano did not communicate with WhopperDaddy again, as no further information was relayed to Detective Pickrell. Nonetheless, on January 19, 2006, almost three months after receiving the information from Detective Passano,[2] Detective Pickrell prepared an affidavit — based entirely on the AOL information, the internet conversation, and her partial substantiation thereof — and petitioned a magistrate judge for a warrant to search Hodson's residence. In the affidavit, Detective Pickrell described the content of Detective Passano's conversation with Hodson (i.e., WhopperDaddy), established Hodson's residence, and requested a warrant to search specific personal property for evidence, specifically:

> Any and all computers, hard drives, zip drives, data bases, software, diskettes, floppy disks, CDs, printers and/or any other electronic devices and/or their components of any kind capable of printing, recording, storing, transferring and/or disseminating documents, notes, calculations, schedules, spread sheets and/or any other information and/or data of any kind including any and all books or manuals that may contain sexually explicit reproductions of a child's image, voice, or handwriting. Including sexually explicit photographs, negatives, slides, magazines, movies, videotapes, audiotapes, and picture or computer generated image or picture, whether made or produced by electronic, mechanical or other means of sexually explicit conduct or visual depiction of a child including undeveloped film or videotape and data stored on computer disk of by electronic means which is capable of conversion into a visual image or material relating to children that serves a sexual purpose for a given individual. Including toys, games, drawings, fantasy writings, diaries, souvenirs, sexual aids, manuals, letters, books about children, psychological books on pedophilia and ordinary photographs of children.

---

[1] It was later determined that, although WhopperDaddy was most certainly defendant Michael Hodson, he actually has only one son (11 years old at the time) and no known nephews. In fact, despite some further investigation, no evidence was discovered that would prove that Hodson ever actually molested or sexually assaulted anyone.

[2] Following an evidentiary hearing on Hodson's motion to suppress the evidence, the magistrate judge noted in his recommendation report to the district court that Detective Pickrell had explained this delay as having been due to the time necessary to obtain information from AOL and had described internet service providers "as 'overwhelmed' by requests from law enforcement across the country." Given the fact that Detective Passano had already obtained the subpoenaed information from AOL prior to October 27, 2005, this explanation rings a bit hollow, but the magistrate judge nonetheless concluded that "the delay in this case does not seem unreasonable," and noted that "Det[ective] Pickrell testified without contradiction that the [Kentucky State Police Task Force] pursued the matter as a top priority."

Visually explicit images, whether on paper or its equivalent stored in electronic, magnetic or other computer formats including such images as stored within computer storage devices and other computer media depicting any child known or reasonably believed to be under the age of 18 years of age, in which the child is actually or by simulation engaged in any act of sexual intercourse with any person or animal; Actually or by simulation engaged in any act of sexual contact involving the sex organs of the child and the mouth, anus and sex organs of the child and the sex organs of another person or animal; Actually or by simulation engaged in any act of masturbation; Actually or by simulation portrayed as being the object of, or otherwise engaged in, any act of lewd fondling, touching, caressing involving another person or animal; Actually or by simulation engaged in any act of excretion or urination within a sexual context; Actually or by simulation portrayed or depicted as bound, fettered, or subject to sadistic, masochistic, or sadomasochistic abuse in any sexual context; or Depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed genitals, pubic area, buttocks or, if such person female, a fully or partially developed breast of a child.

Computer Systems, including, but not limited to system components, input devices, output devices, data storage devices, data transmission devices and network devices; and Computer media; and Other material relating to computer systems and the internet including, but not limited to, documentation, operating system software, application or access program disks, manuals, books, brochures, or notes; and Computer access codes, usernames, log files, configuration files, and passwords; and Any and all evidence related to ownership, control or use of the safe deposit box, files, logs, and accounts.

I am further requesting authorization to remove the computer system(s), and related computer peripherals, storage devices, software and media to an off-site controlled environment to perform the search for the items described above.

This passage constitutes Detective Pickrell's entire depiction in the affidavit — not merely an excerpt — of the places to be searched and the things to be seized. It is significant that this depiction of the "places to be searched and things to be seized" describes and directs a search for evidence of child *pornography*, with nary a hint of child *molestation*.

The affidavit also contained Detective Pickrell's explanation of the circumstances which she believed supported a finding of probable cause. That statement only details the telephone call Detective Pickrell received from Detective Passano advising her of Passano's background and experience as an internet crimes investigator, his undercover work online, the specifics of his AOL chat with WhopperDaddy, and the substance of the information received in response to the AOL subpoena, and concludes with the information Pickrell obtained from the Kentucky State Police Intelligence confirming Hodson's address. Notably, the statement of probable cause contains no information whatsoever with regard to Hodson's engaging in any aspect of child pornography, or any basis for believing that individuals who engage in child molestation are likely also to possess child pornography.

Indeed, Detective Pickrell's exposition of probable cause in the affidavit does not establish, allege, or even suggest any basis for a finding of probable cause to believe that Hodson had ever been involved in child pornography in any manner. Moreover, Detective Pickrell offered no assertion — in either the affidavit or any other evidence (e.g., expert testimony) then before the magistrate judge — of any relational nexus between child molestation and child pornography. Thus, it was and is clear that, in this affidavit, Detective Pickrell established probable cause to search for

evidence of one crime (child molestation) but designed and requested a search for evidence of an entirely different crime (child pornography).

Nonetheless, the magistrate judge issued a warrant authorizing the immediate search of Hodson's residence and delineated the scope of that search by replicating, verbatim, Detective Pickrell's description in her affidavit of the places to be searched and things to be seized — that is, the magistrate judge authorized a search for evidence of child pornography. The magistrate judge also attached Detective Pickrell's affidavit and formally incorporated it into to the warrant.

On January 26, 2006, Detective Pickrell executed the warrant at Hodson's residence and seized two computers, a web cam, a DVD, a CD, a floppy disk, four VHS tapes, and an envelope containing miscellaneous papers. At the police lab, forensic experts searched the hard drives of the two computers and discovered, buried in the hard drives, between ten and 50 pictures of child pornography[3] that had been downloaded on December 6, 2002, but which had later been deleted and were, as of that time, inaccessible to Hodson. None of the images were of Hodson's son and no evidence was seized or subsequently discovered that would support any charge against Hodson of child molestation. On October 23, 2006, the federal grand jury indicted Hodson on charges of receiving and possessing child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (a)(4)(B), respectively.

Hodson moved to suppress the evidence seized during the search, including the images found on his computer, arguing that the search was conducted pursuant to an invalid search warrant because: (1) the information in the affidavit, purporting to support probable cause, was stale; (2) the nexus between the probable cause (i.e., the on-line chat) and the place to be searched (i.e., Hodson's residence) was insupportably speculative; and (3) the affidavit was unsworn. Before the court had ruled on the motion, however, Hodson filed a "supplemental memorandum," in which he argued:

> Simply put, this affidavit and warrant are for child pornography. No information of any kind or nature is offered to support probable cause for child pornography. If [the warrant] has a component seeking evidence of inappropriate online chats[,] it fails to so state in the sections describing the property to be sought and seized. As such the warrant is over broad and almost exclusively directs seizure of items totally unrelated to the probable cause section of the affidavit.
>
> . . .
>
> In this case[,] there were no facts upon which an inference, reasonable or otherwise, could have been made [by the magistrate judge] to support a belief that child pornography could be found in defendant [Hodson]'s residence. Those facts may have existed in the training and experience of the affiant, Detective Pickrell, but were not place[d] in the affidavit or communicated to the [magistrate] judge.

The government responded and disputed all four of Hodson's arguments, specifically countering Hodson's supplemental argument on three grounds: (1) "the Magistrate Judge was entitled to infer that a person with a continued and self-stated sexual interest in children, and a person that was using his computer to satisfy and explore this interest in children, may have possessed images related to sexual exploitation on that computer"; (2) good faith; and (3) inevitable discovery.

---

[3] According to the record, many of these images portrayed prepubescent male children involved in various sex acts and at least one image portrayed an adult male sodomizing a prepubescent male child.

The motion was submitted to a magistrate judge who conducted an evidentiary hearing on November 30, 2006. Upon considering the parties' arguments and the evidence, the magistrate judge submitted a recommendation to the district court on December 13, 2006. The magistrate judge succinctly rejected Hodson's characterization of the evidence as being stale and lacking a person-place nexus, as well as his claim that the affidavit was unsworn. The magistrate judge instead committed his attention to the molestation-pornography nexus and began by stating:

> At best, the evidence in the Affidavit connecting [Hodson] to child pornography is limited and indirect. There is a weak inference that [Hodson] indulges in child pornography because its visual quality is consistent with [Hodson]'s interest in simply *seeing* his children unclothed. Any additional link between [Hodson] and child pornography, however, would require an assumption, *by the issuing judicial officer*, that a person suspected of child molestation or an illicit online chat involving a child also possesses child pornography.

The magistrate judge then rejected that assumption, stating that he was "not convinced that evidence of child molestation and illicit online activity *alone*, which is what the warrant application presents, demonstrates probable cause to believe that [Hodson] possessed child pornography," and supported this statement by citing to dicta from *United States v. Adkins*, 169 F. App'x 961, 967 (6th Cir. 2006) ("Standing alone, a high incidence of child molestation by persons convicted of child pornography crimes may not demonstrate that a child molester is likely to possess child pornography.").

The magistrate judge also asserted that "[w]hile the potential inference between conduct and pornography is not an illogical one, it also is not self-evident." Therefore, he was "persuaded by *Adkins* that the child molestation and illicit online activity described in the Affidavit did not establish probable cause to believe [Hodson] possessed child pornography." In reaching this conclusion, he noted:

> Certainly, a reviewing magistrate [judge] may make reasonable inferences based on common sense. [But, a]s loathsome as [Hodson]'s chat content [wa]s, the [magistrate judge] is not equipped to supply an *empirical* link between sexual deviance, or even sexual attraction, and pornography possession. As *Adkins* suggests, such a link depends on expertise, which Det[ective] Pickrell had and could have [supplied] to support the warrant application [but did not].

Having rejected the government's first argument, the magistrate judge proceeded to its second argument, good faith. Along the way, the magistrate judge inserted a footnote in which he summarily rejected the government's third argument, inevitable discovery, as unsupported by the record and implausible in light of the narrowness of the search described in the warrant.

The magistrate judge accepted the government's "good faith" argument, made pursuant to *United States v. Leon*, 468 U.S. 897 (1984), reasoning that, while Detective Pickrell's failure to explain the molestation-pornography nexus in the affidavit undermined the issuance of the warrant, this omission was not made in bad faith or calculated to mislead the magistrate, but was an innocent oversight. The magistrate judge rejected Hodson's counter-argument that the "bare bones" affidavit in this case invoked the third exception to *Leon*, finding that Detective Pickrell's "failure to include her opinion as the critical link to establish probable cause does not reduce the Affidavit to mere suspicion or belief" because "[t]hese suspected crimes are not as 'unrelated' to child pornography as [Hodson] contends; both the cited conduct and the sought evidence involve sexual exploitation of minors." The magistrate judge also concluded that it was not wholly unreasonable for the officer or the magistrate judge to assume that probable cause based on sexual activity with a minor would support a search for child pornography, inasmuch as at least one other federal court had so held. *See United States v. Baker*, 2006 WL 2270739, *5-6 (D. Nev. Aug. 4, 2006).

The magistrate judge concluded that, on the whole, the warrant was defective because there was neither probable cause to search for child pornography nor a molestation-pornography nexus, but that the officer's good faith excused this defect. Therefore, the magistrate judge recommended that the district court deny the motion to suppress the pornography evidence.

The parties submitted objections and the district court conducted a hearing, after which the court rejected Hodson's staleness claim based on the facts of the case. The district court also deemed the warrant defective for its lack of probable cause to search for child pornography, finding that Detective Pickrell had failed to offer the expertise necessary to establish a "link between sexual deviance . . . and pornography possession," and that courts are not "equipped" to supply that link themselves. But the district court also applied the *Leon* good faith exception, concluding:

> In arguing that the good faith exception should not apply, [Hodson] takes the position that the Affidavit in this case was 'bare bones.' However, contrary to [Hodson's] contention, the Court cannot agree with this assertion. According to the Sixth Circuit, 'bare bones' affidavits contain only suspicion, beliefs, or conclusions, without some underlying factual circumstance to justify a warrant. *United States v. Laughton*, 409 F3d 744, 748 (6th Cir. 2005). In the present case, the Affidavit contains information demonstrating that, at the very least, [Hodson] was engaged in child molestation and illicit online activity. These activities are related to the possession of child pornography in that both involve sexual exploitation of minors. Thus, the Court finds that the officers were objectively reasonable in relying on the warrant to search for child pornography.

The district court therefore adopted the magistrate judge's recommendation and denied Hodson's motion to suppress the evidence. Hodson entered a conditional guilty plea and reserved his right to appeal the denial of his motion to suppress. The district court sentenced Hodson to 71 months in prison and Hodson now appeals the denial of his motion to suppress.

## II.

At this point, it is beyond dispute that the warrant was defective for lack of probable cause — Detective Pickrell established probable cause for one crime (child molestation) but designed and requested a search for evidence of an entirely different crime (child pornography). Consequently, the warrant did not authorize the search and, barring some other consideration, the evidence obtained during that search must be excluded from trial. The question presently before us is whether any other consideration — specifically, the *Leon* good-faith exception — can overcome the defect and justify admission of the evidence anyway. For the reasons that follow, we conclude that it cannot.

The *Leon* good-faith exception applies when a warrant issued by a neutral and detached magistrate is discovered, after the search, to have been nonetheless invalid — and, hence, the search unlawful — yet "the officer conducting the search acted in objectively reasonable reliance on [that] warrant." *Massachusetts v. Sheppard*, 468 U.S. 981, 987-88 (1984) (citing *United States v. Leon*, 468 U.S. 897, 922-23 (1984)). The *Leon* Court based its refusal to suppress evidence in such situations on its conclusion that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Leon*, 468 U.S. at 922. The Court did, however, establish four exceptions to this exception, specifying that suppression remains appropriate if:

(1)     the magistrate [judge] was 'misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth';

(2)     the magistrate [judge] 'abandoned his judicial role' or neutrality;

(3)     the warrant was 'so lacking in indicia of probable cause' as to render official belief in its existence unreasonable; or

(4)     the warrant was so 'facially deficient' that it could not reasonably be presumed valid.

*United States v. McClain*, 444 F.3d 556, 564-65 (6th Cir. 2005) (quoting *Leon*, 468 U.S. at 923) (paragraph breaks inserted). Thus, the *Leon* Court determined, *ad initium*, that officers can never assert reasonable reliance, nor courts find good faith, under these four scenarios.

Hodson argues that the affidavit in this case fails under the third exception — that is, the warrant was so lacking in indicia of probable cause that the officer's belief in its existence was unreasonable. Under this exception, the executing officer must have had "no reasonable grounds for believing that the warrant was properly issued." *United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003) (citing *Leon*, 468 U.S. at 923). "Moreover, the objective reasonableness determination does not examine the subjective states of mind of [the particular] law enforcement officers [conducting this particular search], rather it inquires 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision.'" *Id.* (quoting *Leon*, 468 U.S. at 923 n. 23).

The question we address here is whether the faceless, nameless "reasonably well trained officer" in the field, upon looking at this warrant, would have realized that the search described (for evidence of the crime of child pornography) did not match the probable cause described (that evidence would be found of a different crime, namely, child molestation) and therefore the search was illegal, despite the magistrate's decision to the contrary. We conclude that any "reasonably well trained officer" would certainly have come to that realization if presented with this warrant.

Otherwise stated, we conclude that it was unreasonable for the officer executing the warrant in this case to believe that probable cause existed to search Hodson's computers for child pornography based solely on a suspicion — albeit a suspicion triggered by Hodson's computer use — that Hodson had engaged in child molestation. And, based on the record evidence, it appears that the only reason that the officer executing the search warrant in this case, Detective Pickrell, did not recognize the insufficiency of the warrant was that Detective Pickrell was also the investigating officer who prepared the affidavit, obtained the warrant, and had specialized, subjective knowledge about these kinds of criminal offenses, this search, and this case. But, as the Supreme Court has made clear, such subjective knowledge is not sufficient to satisfy a finding of objective good faith. *See Groh v. Ramirez*, 540 U.S. 551, 564 (2004) ("Moreover, because petitioner himself prepared the invalid warrant, he may not argue that he reasonably relied on the Magistrate's assurance that the warrant contained an adequate description of the things to be seized and was therefore valid.").

We opined in *United States v. Adkins*, 169 F. App'x 961, 967 (6th Cir. 2006), that "[s]tanding alone, a high incidence of child molestation by persons convicted of child pornography crimes may not demonstrate that a child molester is likely to possess child pornography."[4] We adhere to that view and conclude that it was unreasonable for the magistrate judge in this case, when confronted with the request for the warrant, to infer such a nexus without further evidence to support that inference. It is similarly unreasonable for the officer executing the warrant either to infer that nexus

---

[4] In *Adkins*, 169 F. App'x at 964, the investigating officer sought a search warrant for child pornography, among other things, based on a showing of probable cause supporting suspicion of child molestation. But, in *Adkins*, the officer's affidavit included certain information from an FBI expert on crimes against children that demonstrated that, as a "preferential offender," the suspect was likely to pursue and collect child pornography. Therefore, *Adkins* is distinguishable from the present case, and, in any event, its language regarding suspicion of child molestation "standing alone" is dicta.

herself or to rely on her own subjective knowledge to claim reasonable reliance on the warrant.[5] An officer seeking a warrant must produce adequate supporting facts about the underlying circumstances to show that probable cause exists to support the particular search requested. *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir 1996) (citing *Whiteley v. Warden*, 401 U.S. 560, 564 (1971), and *Nathanson v. United States*, 290 U.S. 41, 47 (1933)).

## III.

For the foregoing reasons, we **REVERSE** the district court's denial of the motion to suppress, **VACATE** Hodson's conviction, and **REMAND** for further proceedings consistent with this opinion.

---

[5] We recognize that this holding puts us in apparent conflict with *United States v. Haynes*, 160 F. App'x 940, 944 (11th Cir. 2005), in which the Eleventh Circuit found that the officers' belief that probable cause of child molestation supported a search for child pornography was objectively reasonable, based on no more than "common sense."