Fuentes, Circuit Judge,
Dissenting.
In Davis v. United States, The Supreme Court made it clear that the sole purpose of the exclusionary rule is to deter Fourth Amendment violations. 564 U.S. _, 131 S. Ct. 2419, 2426, 180 L. Ed. 2d 285 (2011). We do not apply it to sanction errant magistrate judges. Id. at 2428. Nor do we apply it when a police officer makes the same legal error as the judge who issued the warrant. Rather, we apply the “extreme sanction of exclusion” only as a “last resort” to deter police conduct that is “deliberate, reckless or grossly negligent.” United States v. Leon, 468 U.S. 897, 916, 926, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984); Davis, 564 U.S. _, 131 S. Ct. at 2427; Herring v. United States, 555 U.S. 135, 144, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009). Here, the trial court made no finding that police officer Naomi Joseph acted deliberately, recklessly, or with gross negligence. Thus, I see no support for the proposition that the Majority’s ruling will have a beneficial deterrent effect. I respectfully dissent because excluding the evidence in this case imposes great costs and “offends basic concepts of the criminal justice system.” Leon, 468 U.S. at 908.[1]
*1343 I.
Following a presentation to Tydel John’s sixth-grade class on the difference between appropriate and inappropriate touching, several students reported that John had engaged in inappropriate contact with them. After interviewing some of the students, police officer Naomi Joseph submitted an affidavit and request for a warrant to search John’s home. The affidavit stated that “persons who commit sexual offenses involving children customarily hide evidence of such offenses, including notes, photographs, computer files, in their homes and on their computer.” (J.A. 108, 182). Based on this belief, Joseph concluded that she would find notebooks, pornographic photos of children and computer files containing pornographic notes or photographs of children. A Superior Court Judge determined there was probable cause to believe evidence of sexual contact would be found in John’s home. Ultimately, police searched John’s home and, while looking for evidence of child pornography, they found notebooks containing chronicles of John’s exploitation of young girls.
On John’s motion, a Virgin Islands superior court judge, relying on the Sixth Circuit’s decision in United States v. Hodson, 543 F.3d 286 (6th Cir. 2008), held that because a warrant establishing probable cause for child molestation does not necessarily provide probable cause to search for child pornography, John’s notebooks must be suppressed. I believe that the Majority decision affirming that suppression to be wrong under the good faith exception to the exclusionary rule and contrary to the Supreme Court’s most recent pronouncement of that rule in Davis v. United States, 564 U.S. _, 131 S. Ct. at 2428 (2011). In short, “[b]ecause suppression would do nothing to deter police misconduct in these circumstances, and because it would come at a high cost to both the truth and the public safety,” I respectfully dissent. Id. at 2423.
II.
My disagreement with the Majority is not that a correlation between child abuse and child pornography was not properly established. Indeed, there may be a nexus. As then Circuit Judge Sotomayor, observed, “[p]erhaps it is true that all or most people who are attracted to minors collect child pornography.” United States v. Falso, 544 F.3d 110, 122 (2d *1344 Cir. 2008)(Sotomayor, J.). And perhaps it is not.[2] In this case, I agree that the judge who issued the warrant should have insisted on a more direct connection between child abuse and child pornography. But, in my view, the failure to allege the connection between the two does not support the Majority’s view that Officer Joseph was “grossly negligent” and that failure does not justify the extreme sanction of exclusion.
The Supreme Court has articulated two principles that limit the application of the exclusionary rule. The rule applies “only where it result[s] in appreciable deterrence” and, even when it does, “the benefits of deterrence must outweigh the costs.” Herring, 555 U.S. at 141 (citing Leon, 468 U.S. at 909, 910) (internal quotation marks omitted); see also Davis, 564 U.S. _, 131 S. Ct. at 2422. There is likely to be no appreciable deterrence “when an officer acting with objective good faith has obtained a search warrant and acted within its scope” because “[i]n most such cases, there is no police illegality and thus nothing to deter.” Leon, 468 U.S. at 920-21. On the other hand, when an officer exhibits “deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs.” Davis, 564 U.S. _, 131 S. Ct. at 2427 (internal quotation marks and citation omitted).
The Majority believes that its decision will have a deterrent effect because Joseph’s behavior was, “at a minimum, grossly negligent.” (Maj. Op. at 16.) This is a factual determination that is not supported by the record. Cf. Franks v. Delaware, 438 U.S. 154, 155, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978) (concluding that a defendant must prove by a preponderance of the evidence at a factual hearing that an affiant knowingly, intentionally, or with reckless disregard for the truth, included *1345 a false statement in an affidavit). Moreover, we are not in a position to make such a finding, depending as it does on assessments of credibility and demeanor that are not readily apparent in a transcript. Absent such a finding, “the deterrence rationale loses much of its force and exclusion cannot pay its way.” Davis, 564 U.S. _, 131 S. Ct. at 2427 (internal quotation marks and citation omitted).
The Majority further concludes that the warrant was “based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,” and hence culpable enough to be deterred by applying the exclusionary rule. (Maj. Op. at 11 (quoting United States v. Tracey, 597 F.3d 140, 151 (3d Cir. 2010)). However, applicable precedent requires us to determine the culpability of a police officer’s conduct in an objective fashion, asking whether “a reasonably well trained officer would have known that the search was illegal in light of all the circumstances.” Herring, 555 U.S. at 145 (quoting Leon, 468 U.S. at 922 n.23).
In this light, the question is what a reasonably well trained officer would have known when applying for a warrant in December 2007. Such an officer would have known that probable cause exists when there is a “fair probability that contraband or evidence of a crime will be found in a particular place,” Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), but little else. In December 2007, there were no precedents applying this broad standard to analogous facts. Under such circumstances, a reasonable police officer would do exactly what Joseph did: she would submit a request to a judge asking whether there is probable cause for a warrant. And, lacking legal training herself, she would then rely on that judicial determination to do her job. One might argue that suppressing evidence obtained when a warrant is invalid would encourage police officers to scrutinize the warrant closely and point out legal errors. But police officers are not lawyers and this argument was expressly rejected in Leon as “speculative.” 468 U.S. at 918.
The reasonably well-trained officer would fare no better today. While that officer would have the benefit of several court of appeals opinions discussing the issue of whether probable cause to believe that someone has molested a child automatically provides probable cause to believe that someone will possess photographic evidence of that crime (or photos used to facilitate the crime — tools of a despicable trade), those opinions provide conflicting guidance. Compare Hodson, 543 F.3d at 292, 293 *1346 (concluding that there is no probable cause in such circumstances and applying the exclusionary rule), with Falso, 544 F.3d at 122, 125 (concluding that there was no probable cause, but refusing to apply the exclusionary rule), and with United States v. Colbert, 605 F.3d 573, 576, 578-79 (8th Cir. 2010) (concluding that the relationship between child molestation and child pornography is “intuitive,” thus providing probable cause, and then holding in the alternative that the exclusionary rule would not apply).
The split in the courts of appeals that have addressed this issue shows that even judges, steeped in the law and acting in the utmost good faith, can have different opinions on the issue. If even the experts cannot agree on whether probable cause to search for evidence of child molestation provides probable cause to search for child pornography, it was not objectively unreasonable — let alone, entirely unreasonable — for Joseph to take one side of the controversy over the other, even if we now disagree with that decision. Cf. Leon, 468 U.S. at 926 (noting divided opinion among judges as to the existence of probable cause in that case and then observing that under such circumstances “the officers’ reliance on the magistrate’s determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate”); see also Falso, 544 F.3d at 128 (stating that this is an issue “upon which reasonable minds can differ” before concluding that police officers acted in good faith).
Even the Second Circuit, which quite correctly found the supposed connection between child molestation and child pornography to be nothing more than an “inferential fallacy of ancient standing,” could not come to the conclusion that a police officer acting on a warrant based on such an assumption was entirely unreasonable. See Falso, 544 F.3d at 128 (“Once the district court rules on the legal sufficiency of the facts alleged in the affidavit, the officers were justified in executing 'the warrant.”): It is not difficult to see why. Probable cause determinations are not, and never have been, based on rigid logic. As the Supreme Court explained almost thirty years ago, evidence must be “seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement. . . . [P]robable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules.” Gates, 462 U.S. at 232. It was not unreasonable for Joseph to assess the probability *1347 that John would have child pornography and conclude that there was probable cause.
A comparison with the Supreme Court’s recent decision in Davis makes this clear. In Davis, the Supreme Court declined to apply the exclusionary rule where the police followed a court of appeals precedent authorizing their search of an automobile because “[a]bout all that exclusion would deter in this case is conscientious police work. Responsible law-enforcement officers will take care to learn ‘what is required of them’ under Fourth Amendment precedent and will conform their conduct to these rules.” 564 U.S. _, 131 S. Ct. at 2429 (quoting Hudson v. Michigan, 547 U.S. 586, 599, 126 S. Ct. 2159, 165 L. Ed. 2d 56 (2006)). This case is the other side of the Davis coin. Here, there was no legal precedent to guide a responsible law enforcement official’s judgment as to whether there was probable cause for a particular search. As I’ve said, a responsible law enforcement official in this position does exactly what Joseph did and seeks a legal determination of probable cause from a judge. The police officer then relies on this judicial determination authorizing her conduct as a tool to “fulfill [her] crime-detection and public-safety responsibilities.” Id. Applying the exclusionary rule in such circumstances would serve only to “discourage the officer from doing [her] duty,” which is “not the kind of deterrence the exclusionary rule seeks to foster.” Id. (internal quotation marks and citation omitted).
Joseph’s mistake was not the error of culpably omitting a crucial fact linking child molestation with child pornography. Her mistake was in thinking that the facts she did provide — that “persons who commit sexual offense crimes involving children customarily hide evidence of such offenses, including notes, photographs, [and] computer files, in the homes and on their computer[s]” — were sufficient to establish probable cause to search for child pornography. In other words, she believed there was a fair probability that a man accused of molesting children and recording his crimes in one medium — a written journal — might also record them in another — photographs. Although we might now wish that she had provided more specific justifications for this belief, Joseph’s conduct was not entirely unreasonable. She made a mistake. But that mistake will not be undone by today’s opinion.
Without a finding of deterrence, application of the exclusionary rule carries substantial costs:
*1348 Exclusion exacts a heavy toll on both the judicial system and society at large. It almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence. And its bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment.
Davis, 546 U.S._, 131 S. Ct. at 2427 (citations omitted). For all of these reasons, I respectfully dissent.

 I agree with my colleagues that we have jurisdiction over this interlocutory appeal pursuant to 48 U.S.C. § 1613.

 The literature is mixed. Most of the studies are concerned with whether possession of child pornography causes the possessor to actually commit a sexual offense against a child. The reverse relationship — whether child molesters are more likely to possess child pornography — has been of less interest to scholars. It is clear that the “empirical literature is unable to validate the assumption that there is a causal connection between possession of child pornography and child sex abuse.” Carissa Byrne Hessick, Disentangling Child Pornography from Child Sex Abuse, 88 WASH. U. L. Rev. 853, 875(2011). But it is equally clear that the empirical data shows a high correlation between general pornography consumption and child molestation. See Neil Malamuth & Mark Huppin, Drawing the Line on Virtual Child Pornography: Bringing the Law in Line with the Research Evidence, 31 N. Y.U. Rev. L. & SOC. Change 773,794 (2007) (“Overall, these data do indicate that child molesters have had more pornography exposure than other groups.”).