NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0341n.06

No. 09-5583

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*May 20, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| TOBY TOBIAS SENTER, | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: MARTIN and SUTTON, Circuit Judges; GRAHAM, District Judge.[*]

SUTTON, Circuit Judge. A jury found Toby Senter guilty of conspiring to distribute cocaine. At sentencing, the district court found that Senter joined the conspiracy after at least two prior felony drug convictions, requiring a life sentence. Senter's challenges to the sufficiency of the evidence and to his sentence come up short, and accordingly we affirm.

I.

In 2006, a federal-state drug task force learned that Senter might be selling drugs in the Knoxville area. In early 2007, agents convinced Dustin Isom, a known associate of Senter and a fellow trafficker, to work as a confidential informant. After Isom made a controlled buy of 125.2 grams of cocaine, a federal judge authorized a wiretap on Senter's phones. The task force

---

[*]The Honorable James L. Graham, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

intercepted several trafficking-related conversations between Senter and several local dealers, including Walter Holt, Todd Douglas and Keith Hicks, as well as Senter's Atlanta supplier, Oswald Vyphuis.

In March 2007, Senter made a series of phone calls to Vyphuis and arranged to buy three-and-a-half kilograms. The task force contacted DEA agents in Atlanta who identified a silver Nissan Maxima linked to Senter parked outside Vyphuis's house. On April 4, 2007, Senter called Todd Douglas and told him he was making another trip to Atlanta. He offered to take Douglas along and to get him "two" on top of the kilograms of cocaine Senter would be buying. Trial Tr., Vol. I, at 142. The task force planned to arrest Senter once he made the trip, but their wiretap warrant expired on April 7th, leaving the investigation with "no ears." *Id.* at 149. On April 9th, the task force decided to bring Senter in, and after one failed attempt and an hour-long car chase across four counties, they arrested him.

A federal grand jury indicted Senter, Douglas, Holt and Hicks for conspiring to distribute five or more kilograms of cocaine. *See* 21 U.S.C. §§ 841(a)(1), 846. Douglas, Holt and Hicks pled guilty, and they all testified at Senter's trial about the cocaine he had sold them, which came to over 100 kilograms. The jury found Senter guilty. At sentencing, the district court found that Senter entered the conspiracy after at least two felony drug offenses and imposed a life sentence.

II.

Senter styles his first argument as a challenge to the sufficiency of the government's evidence. But the thrust of his claim is that the district court should have excluded as hearsay certain "out-of-court statements made by the coconspirators." Senter Br. at 25. We cannot agree.

Statements by coconspirators made in furtherance of a conspiracy are not hearsay. Fed. R. Evid. 801(d)(2)(E). To admit such evidence, the government must establish (1) the existence of a conspiracy, (2) the defendant's participation in it and (3) that the statement furthered the aim of the conspiracy. *United States v. Damra*, 621 F.3d 474, 492 (6th Cir. 2010). The government must do so by a preponderance of the evidence, and the court may consider the statement itself in satisfying these requirements, though it must require "corroborat[ing] . . . independent evidence" in doing so. *United States v. Payne*, 437 F.3d 540, 544 (6th Cir. 2006).

Senter does not challenge the government's efforts to meet these three requirements, expressly conceding the first, *see* Senter Br. at 27, and never addressing the other two. He instead argues that the government did not present independent evidence to corroborate the *content* of some of the statements, namely the quantities of drugs he sold. Nothing in the rules of evidence or the decisions of this Court, however, requires independent evidence to bolster the factual assertions contained in a coconspirator's statement. *See Damra*, 621 F.3d at 493 (the coconspirator rule does not require "confirmation of the contents of any one statement"). In determining a statement's admissibility, the district court, as an evidentiary gatekeeper, must demand independent evidence

to meet the conspiracy, participation and furtherance requirements. But in determining a statement's weight, the jury faces no such limitation and may believe the statement (or disbelieve it) with or without corroboration.

Senter's argument, for what it is worth, fails even on its own terms, as other evidence confirmed he trafficked in large amounts of cocaine. Douglas, Holt and Hicks all gave *in*-court, first-hand accounts of the drugs Senter sold them. Douglas testified that Senter agreed to give him eighty ounces (between two and three kilograms) of cocaine "to sell at a thousand dollars a pop." Trial Tr., Vol. II, at 29. As Douglas's partner, Hicks explained, "[Senter] offered [Douglas] a deal, 80 ounces of cocaine for $80,00[0] in return and then when they met the agreement, when that was done, [Douglas] was supposed to get some real low prices on some kilos." *Id.* at 125. Holt testified that 50 kilograms was a "low estimate" for what Senter sold him in 2006 alone. Trial Tr., Vol. III, at 5. This testimony makes it difficult to deny, or perhaps even question, that Senter sold large amounts of cocaine, and none of it involves hearsay as each statement was "made by the declarant while testifying at the trial." Fed. R. Evid. 801(c). A rational juror could find beyond a reasonable doubt that Senter conspired to distribute at least five kilograms of cocaine. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Senter raises several challenges to his life sentence, all unavailing. The government complied with 21 U.S.C. § 851, which sets out the procedure for enhancing sentences in drug-trafficking cases. The AUSA gave Senter notice before trial that he intended to seek an enhanced sentence based on Senter's prior felony drug convictions. *See id.* § 851(a)(1). The notice identified

each offense, date of offense, court of conviction, docket number and date of sentencing. The district court asked Senter whether he conceded or denied the prior convictions. *See id.* § 851(b). He denied them. Over the defendant's written objections, the government introduced Senter's parole officer as a witness and submitted certified copies of the judgments. *See id.* § 851(c). The district court found that Senter had two or more prior convictions and imposed the life sentence. *See id.* § 851(d). The government met each requirement of § 851.

Once the court made these findings, it had no choice when it came to imposing this sentence. Congress requires a life sentence in this setting, *see id.* § 841(b)(1)(A), and that is so despite the admonition in 18 U.S.C. § 3553(a) that federal courts "shall impose a sentence sufficient, but not greater than necessary, to comply with" the defined objectives of sentencing. On several occasions, criminal defendants have asked us to conclude that § 3553(a) trumps mandatory minimum sentences, and each time we have answered the same way: no. *See, e.g.*, *United States v. Wettstain*, 618 F.3d 577, 591–92 (6th Cir. 2010); *United States v. Cecil*, 615 F.3d 678, 695 (6th Cir. 2010).

Senter independently makes a separate argument under § 841(b)(1)(A). Three times in § 841(b), he points out, Congress said, "Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person" convicted under certain provisions. By omitting the same clause from § 841(b)(1)(a), Senter submits, Congress meant to embrace the Goldilocks sentencing principle of § 3553(a) for sentences under this subsection: not too long, not too short, just right, *see United States v. Pruitt*, 502 F.3d 1154, 1175 (10th Cir. 2007) (McConnell, J., concurring) (describing § 3553(a) but not § 841(b)(1)(a)).

Senter's reading of the two provisions would give no effect to the phrase "mandatory term of life imprisonment" in § 841(b)(1)(A), particularly the word "mandatory." It also would ignore 18 U.S.C. § 3551, which says that defendants must be sentenced according to § 3553(a), "[e]xcept as otherwise specifically provided." In § 841(b)(1)(A), Congress "specifically provided" that defendants like Senter would be sentenced to life imprisonment. Further confirming the mandatory nature of this sentence is the venerable principle that "a specific provision . . . controls ones of more general application." *Bloate v. United States*, __ U.S. __, 130 S. Ct. 1345, 1354 (2010). Section 3553(a) is the more general of the two sentencing provisions, and as such it "will not be held to apply to a matter specifically dealt with" in § 841(b)(1)(A). *Bloate*, 130 S. Ct. at 1354. Against this backdrop, the rule of lenity adds nothing to Senter's argument. The rule applies only if "ambiguity or uncertainty" remains "at the end of the process of construing what Congress has expressed." *Chapman v. United States*, 500 U.S. 453, 463 (1991). Because § 841(b)(1)(A) unambiguously requires a life sentence for Senter, one that is not subject to modification under § 3553(a), there is no work for the lenity canon to do.

Nor do *United States v. Booker*, 543 U.S. 220 (2005), and *Kimbrough v. United States*, 552 U.S. 85 (2007), somehow make § 841(b)(1)(A) advisory. *Kimbrough*, the latter of the two cases, said as much, explaining that district courts remain "constrained by the mandatory minimums Congress prescribed in the 1986 Act." 552 U.S. at 108. And we have said the same thing. *See United States v. Whitehead*, 415 F.3d 583, 590 (6th Cir. 2005).

Nor does this mandatory life sentence violate the United States Constitution. It is consistent with the Fifth Amendment's guarantee of due process, even though it "gives the prosecutor a great deal of discretion." *United States v. Pruitt*, 156 F.3d 638, 645 (6th Cir. 1998). It does not deprive defendants of the equal protection of the laws. *See United States v. Wimbley*, 553 F.3d 455, 463 (6th Cir. 2009). It does not run afoul of the Eighth Amendment's prohibition against cruel and unusual punishments. *United States v. Flowal*, 163 F.3d 956, 963–64 (6th Cir. 1990). And it is consistent with *Woodward v. North Carolina*, 428 U.S. 280 (1976), and *Lockett v. Ohio*, 438 U.S. 586 (1978), which establish procedural restrictions for *capital* cases.

III.

For these reasons, we affirm.