**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0407n.06

**No. 10-5015**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

***Jun 22, 2011***

LEONARD GREEN, Clerk

**UNITED STATES OF AMERICA,**

       **Plaintiff-Appellee,**

v.

**ERIC WILLIAMS,**

       **Defendant-Appellant.**

_____/

       **ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF TENNESSEE**

**BEFORE: SUHRHEINRICH, MOORE, and COOK, Circuit Judges.**

       **SUHRHEINRICH, Circuit Judge.** Defendant Eric Williams appeals his conviction and sentence following a jury conviction on two counts of being a felon in possession of two different firearms, in violation of 18 U.S.C. § 922(g)(1). We AFFIRM.

**I. Background**

       Memphis Police Department Lieutenant Ed Vidulich was found shot to death in his home on January 28, 2008. Several firearms were taken during the robbery-homicide, namely Vidulich's service revolver, a .40 caliber semi-automatic pistol, a .38 caliber revolver, and a 9mm caliber semi-automatic pistol. Defendant's stepson, Dexter Cox, was identified as a suspect in the murder and arrested on January 30, 2008.

       The following story was relayed at trial. Dondreil Cunningham testified that on January 30, 2008, Cox came to his home to sell him a firearm. Cunningham went with Cox to Cox's house on Haywood. Cox resided with Defendant. There, Cunningham saw that Cox had four firearms, which

he kept in an orange newspaper bag. Cox offered to sell Cunningham a "nine" for $150.00. Cox took the "nine" out the bag, put the other three guns back inside the orange bag, and put the bag in an air conditioner vent. The two went back to Cunningham's house. On the way they were stopped by Defendant and Vincent Clifton. Defendant told Cox he was selling the firearm "too cheap," but Cox said he was going to sell it anyway.

Cunningham went inside the house to retrieve the money for the firearm. Cox remained outside and began shooting the firearm into the air. Memphis Police Officer John Harper, who was working across the street at Frayser High School, heard the shots. Harper arrested Cox for unlawful possession of a weapon and disorderly conduct. He found the firearm in the backyard of Cunningham's residence. Although Cox had Vidulich's firearm on him at the time of the arrest, the officers did not realize it, and Cox was released shortly thereafter.

On January 31, 2008, officers executed a search warrant on Defendant's house. During the search they noticed the air conditioner vent and the empty orange newspaper bag described by Cunningham. The officers also discovered several .38 caliber spent shell casings. They did not discover any firearms.

Meanwhile, Cox was re-arrested. He admitted to the murder of Lt. Vidulich, as well as two other homicides. Cox said that he and Defendant moved the weapons to another house on Haywood.

Vincent Clifton testified that he did not know Cox, but knew his stepfather, Defendant. Clifton stated that after Cox was arrested, Defendant asked Clifton to hold some guns for him because Defendant, a convicted felon, was afraid the police were going to search his house. Defendant brought the guns to Clifton's house (Clifton resided with his parents), and Clifton hid the guns outside under some leaves.

Not long after, Defendant and his father, Eric Stinson, went to Clifton's residence to retrieve the weapons. Vicki Jackson, who was dating Stinson at the time, testified that she went with them. Jackson said that Defendant asked Stinson to hold the firearms for him or to sell them if he knew anyone who wanted them. Later, Stinson asked Defendant to take back the guns. Stinson testified that Defendant asked him to hold "something" but that he did not see and did not know what was in the bag that he was asked to hold. Stinson said that he called Defendant to come get the bag because he thought there may be marijuana in it. He also testified that the did not discuss anything about weapons with Defendant.

Clifton went with Defendant to Stinson's house and retrieved the guns. They took the guns back to Clifton's house and hid them there.

Officers searched Clifton's residence. They recovered two firearms: a Rossi .38 caliber revolver, which matched the shell casings found at Defendant's residence on January 31, 2008; and the Smith & Wesson .40 caliber semi-automatic pistol used to shoot Lt. Vidulich. Clifton was interviewed and told the officers that Defendant had asked him to store the firearms.

On July 31, 2008, a federal grand jury returned a two-count indictment charging Defendant with being a felon in possession of the two firearms retrieved from Clifton's residence.

At trial, Cox testified that he stored the guns at Defendant's home but that no one else knew the weapons were there. Cox said that he gave the guns to Clifton. Eddie Williamson, an inmate at the Shelby County jail, testified that Cox said he asked Defendant to move the guns. Donald Edwards, Defendant's cell mate, said Defendant admitted that he hid the firearms at Clifton's.

After a four-day trial, a jury convicted Defendant of knowingly possessing the Rossi and the Smith & Wesson, in violation of 18 U.S.C. § 922(g).

Defendant's adjusted presentence report set the total offense level at 30,[1] which included a four-level enhancement because the guns were used or possessed in connection with another felony offense. *See* U.S.S.G. § 2K2.1(b)(6). Defendant's criminal history was IV (based on seven criminal history points). The recommended Sentencing Guidelines range was 135 to 168 months. The statutory maximum was 120 months.

Defendant filed a position paper, asking the court to grant a "slight" variance from the 120-month statutory range imposed under 18 U.S.C. § 924(a)(2). Defendant conceded at sentencing that, based on the evidence presented at trial, the Government proved he possessed the firearms in connection with the state felony of accessory after the fact. The district court sentenced Defendant below the Guidelines range to the statutory mandatory maximum of 120 months' imprisonment, to be followed by three years of supervised release.

On appeal Defendant claims that (1) the Government did not prove that he violated § 922(g); (2) his Sixth Amendment confrontation right was violated because the district court limited his cross-examination of Vicki Jackson; and (3) the sentence imposed was unreasonable.

## II. Analysis

### A. Sufficiency of the Evidence

In evaluating a sufficiency of the evidence claim, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found

---

[1]Defendant had a base offense level of 24, pursuant to U.S.S.G. § 2K2.1, because he had two prior felony convictions for either a violent crime or a controlled substance offense. Two points were added because the offense involved three to seven firearms. *See* U.S.S.G. § 2K2.1(b)(1)(A).
    The 2008 edition of the Guidelines Manual was used.

the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Defendant claims the Government did not present sufficient evidence to establish beyond a reasonable doubt that he possessed the two firearms. To the contrary, the trial testimony supports the jury verdict. Cunningham testified that Cox stored the firearms at Defendant's house and he also stated that Defendant told Cox not to sell the 9mm at such a low price. Less than one day after Cunningham had observed Cox place the firearms in an orange newspaper bag inside an air conditioner vent in Defendant's house, the firearms were missing but the empty bag was in the same location. Clifton testified that Defendant told him to hold some guns for Defendant. Jackson testified that she was with Defendant and Stinson when they picked up the firearms at Clifton's residence, and that Defendant asked Stinson to hold the firearms for Defendant. Cox admitted upon his arrest that he and Defendant hid the weapons at Clifton's house. Cox also told this to a fellow inmate. Finally, Defendant himself told his cell mate that he hid the guns at Clifton's residence. In short, there was ample evidence upon which the jury could conclude beyond a reasonable doubt that Defendant knowingly possessed the two firearms, in violation of § 922(g).

**B. Sixth Amendment Claim**

Defendant alleged that the district court violated his rights under the Confrontation Clause when it prohibited him from questioning Jackson, a key government witness, about pending charges against Stinson, Defendant's father and Jackson's ex-boyfriend. Defendant claims that Jackson's testimony suggested that Defendant attempted to hide firearms at his father's home, and thus provided circumstantial evidence necessary to infer Defendant's guilt.

Jackson dated Stinson for six years. The relationship ended not long before trial, and Stinson had been charged with attempting to murder Jackson's then-current boyfriend. Defense counsel attempted to impeach Jackson with this information, arguing that it gave her a motive to lie. The district court refused the request, stating that the testimony was not relevant since Stinson was not the defendant on trial. The district court ruled that there had been no conviction, so the evidence could not be used to impeach, and that it was otherwise just piling an inference on an inference. However, the district court allowed defense counsel to inquire as to the then-current status of their relationship.

The Sixth Amendment guarantees the right of an accused "to be confronted with the witnesses against him." U.S. Const. amend. VI; *see also Pointer v. Texas*, 380 U.S. 400, 407-08 (1965). Cross-examination is a "primary interest secured" by the Confrontation Clause. *Douglas v. Alabama*, 380 U.S. 415, 418 (1965); *accord Davis v. Alaska*, 415 U.S. 308, 315-16 (1974).

> "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness."

*Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986) (second alteration in original) (internal quotation marks and citation omitted). "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1986) (per curiam). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive

or only marginally relevant." *Van Arsdall*, 475 U.S. at 679; *see also Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989) ("Where it is merely the *extent* of cross-examination that is limited, the trial judge retains a much wider latitude of discretion. . . .").

Confrontation Clause challenges are reviewed de novo. *United States v. Warman*, 578 F.3d 320, 345 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 1103 (2010). A violation of the Confrontation Clause is subject to a harmless error analysis. *Van Arsdall*, 475 U.S. at 684.

Whether the district court abused its discretion in preventing Defendant from cross-examining Jackson about the pending state charges against Stinson is a close question. As the district court found, Stinson's pending state charge was not directly related to Jackson's testimony in the case against Defendant. But Stinson is Defendant's father, and thus Jackson's relationship with Stinson is relevant to her testimony in Defendant's case. The district court permitted Defendant to cross-examine Jackson generally about the current status of her relationship with Stinson but did not permit Defendant to question Jackson about Stinson's attempt to murder her current boyfriend. The jury would "have received a significantly different impression" of Jackson's relationship with Stinson, and therefore of her credibility, had Defendant been permitted to cross-examine Jackson about the circumstances of the demise of the relationship. *Van Arsdall*, 475 U.S. at 680. Nevertheless, assuming that the district court did violate Defendant's Confrontation Clause rights, the error was harmless. *See id.* at 684. Although Jackson was an important witness, Clifton, Williamson, and Edwards also testified regarding Defendant's possession of the two firearms. Defendant was permitted to question Jackson not only about the general status of the relationship with Stinson but also about why she did not tell the police about what she knew until the police contacted her the week before Defendant's trial. Considering the whole record of the prosecution's

case, any error preventing Defendant from cross-examining Jackson about Stinson's pending state charges was harmless.

## C.  Sentencing Issue

Defendant claims the sentence imposed is substantively unreasonable because the district court failed to properly weigh the mitigating factors and circumstances under 18 U.S.C. § 3553 suggesting a lesser penalty, particularly § 3553(a)(1) (history and characteristics of the defendant and (a)(2) (need to protect the public).  Defendant contends that the district court gave too little weight to the fact that in Tennessee, his sentence for accessory after the fact would have been 24 to 48 months; *see* Tenn. Code Ann. § 39-11-411(c).  Thus, Defendant contends that application of the enhancement overstated the seriousness of the underlying offense.  He also asserts that his recent conduct suggests that the public does not need to be protected from him.  The Government submits that the district court did not fail to recognize its discretion to vary from the Guidelines, but rather rejected Defendant's argument.

Section 2K2.1(b)(6) provides for a four-point enhancement if the defendant possesses any firearm in connection with another felony offense.  Application Note 14(C) states that "another felony offense" for purposes of this section includes "any Federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained."  U.S.S.G. § 2K2.1(b)(6)(A) cmt. n. 14.  The Tennessee crime of accessory after the fact is a Class E felony.  *See* Tenn. Code Ann. § 39-11-411(c).  The sentencing range for a "Range II" offender who commits a Class E felony is two to four years.  *See id.* §§ 40-35-111(b)(5), 40-35-112(b);[2] *see generally* Tenn. Code Ann. § 40-35-106.  Without the four-level

---

[2]Defendant claims that "it would appear" that he would be a Range II offender.

enhancement, Defendant's offense level would have been 26. With a criminal history category IV, the advisory Guidelines range would have been 92 to 115 months. This was the range variance Defendant requested. With the enhancement, his total offense level was 30, with a resulting advisory Guidelines range of 135 to 168 months, based on a criminal history category IV.

In his amended position paper with respect to sentencing factors, Defendant submitted that, while the four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6) was "technically correct based on the testimony" of Stinson, Jackson, and Clifton, it "overstate[d] the seriousness of the offense." Defendant also argued that "the public need not be so protected from" him for longer than 92-115 months. *See* 18 U.S.C. § 3553(a)(2)(C). Defendant acknowledged that he had two violent felony convictions, but that he committed the offenses when he was 18 and 22 years of age, and that by the time of sentencing, when he was 35 years old, he "was on a decent track to getting his life straightened-out." In particular, Defendant pointed out that he was employed, married, and taking care of his children. Further, despite having a learning disability and no high school education, he and his wife had been making ends meet and owned a modest home.

In its amended position paper and response to Defendant's position paper, the Government asserted that a four-level reduction was not warranted and that Defendant should be sentenced to the statutory maximum of 120 months.

At the sentencing hearing, Defendant reiterated the position set forth in his position paper:

> The accessory after the fact is an interesting application in this case because although that was proven at the trial was he knew [sic] that Dexter Cox was in custody. And that the sentence in state court would be two to four years, but by application of 2K2.1(b)(6) it bumps up his sentence much more severely than two to four years.

So that's why we present to you, Your Honor, a potential opportunity for a variance in this case, a slight variance, not – not a great variance but to put it more in line of what his punishment would have been had it been a state charge and a state sentence.

So we suggest a range between 92 and a hundred and fifteen months would be sufficient to adequately address the Section 3553(a) factors.

After giving Defendant an opportunity to make a statement (in which Defendant maintained his innocence and told the court that he "would do well in society"), the district court turned to the § 3553(a) factors, beginning with the "offense conduct," *see* 18 U.S.C. § 3553(a)(1), (a)(2)(A). The court stated in key part:

The conduct that is described in the Presentence Report is very serious conduct because if individuals assist others in avoiding detection, they control and hide firearms and ammunition. A felon in possession which certainly precludes them from doing any of that, a complicated crime, that is complex in the sense that not only is it the offense of possessing the firearm when you cannot do that, but it is also an offense of aiding in the efforts of a defendant not to be apprehend [sic], essentially in the obstruction of an investigation, also.

So it's a – it's a serious crime that is complicated by the fact that the result, it could have been successful, and result not just the crime under 922(g), but keeping the government from being able to successfully prosecute another crime, it's a very serious crime.

The court next considered Defendant's "history and characteristics." *See* 18 U.S.C. § 3553(a)(1). The court observed that Defendant's criminal history began at age twelve, when Defendant was involved in a robbery. The court chronicled Defendant's criminal history. At age thirteen, Defendant and three other individuals robbed two female victims at gunpoint. At age seventeen, Defendant was charged with unlawful possession of a weapon and given a sixty-day prison sentence, with fifty-nine days suspended. The court noted that probation eventually had to be revoked. At age eighteen, Defendant was convicted of criminal attempt murder II and aggravated

robbery. Defendant was armed with a handgun. Defendant received an eight-year sentence, but he was paroled after two years. Parole was revoked a year later and Defendant was not reparoled for another five years. Defendant was paroled in 2002. At the age of twenty-two, Defendant was convicted of aggravated robbery and sentenced to twelve years' imprisonment. Defendant was paroled after five years, but then had parole revoked. Defendant was released later in 2008. The court noted that the Defendant robbed two individuals at gunpoint. The court commented that "it appears that much of the last, for a significant period of time, in the last ten or 12 years you've been busy." The court also noted that Defendant was "successful for a period of time" until parole was revoked and Defendant was taken into custody in April 2008. The court added that, in addition to the crimes mentioned, Defendant committed a number of other crimes throughout this period. Further,

> when you look at a period of time in which the person has been incarcerated for a significant periods [sic] and then has reoffended relatively quickly, most of the time, not all of the time, then that is disturbing because it indicates that a person continues to offend even though they received pretty substantial punishment in the State of Tennessee.

The court acknowledged that Defendant's most serious criminal activity was not recent (his two prior felony convictions occurred when he was 18 and 22 years old and he was 35 at the time of sentencing), and that his most recent past included only comparatively minor offenses such as failure to appear, unlawful possession of a controlled substance, a few driving offenses, and an animal cruelty offense. The court also noted that Defendant had made "great strides" towards a lawful and productive life; that he had a learning disability; and that he was married, employed, and taking care of his children. *See* S. Tr. at 20-24.

-11-

Next the court addressed a just punishment, the need to deter others, and promoting respect for the law. Concerning the need to protect the public, the court found that Defendant's past reflected an inability to conform his conduct "to the expectations that society has articulated by the law," and that "[i]n this case what it tells us is that that's been difficult for you to do. . . . [I]t has been difficult to consistently remember that you cannot do certain things." The court therefore held that there was "some need to protect the public."

The court considered the remaining § 3553(a) factors and concluded that viewed together, "the penalty should be what the government has asked for." The court reiterated:

> But the longer sentence is necessary for the reasons we talked about, the need to protect the public, unfortunately, there's a need to deter others from committing this type of offense, . . . it's a genuine important factor here, the gravity of the offense conduct, the nature of what was going on and the context of the violation that occurred in 922(g) violation [sic]. The case really cries out in many ways for this sentence.
>
> So that's the sentence that we need to impose.

Finally, the court asked if either party had any objections. Both responded no.

This court reviews a district court's sentencing decision for reasonableness, which has both a substantive and a procedural component. *See Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Madden*, 515 F.3d 601, 609 (6th Cir. 2008). A sentence is procedurally unreasonable if the court improperly calculated the Guidelines range, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence. *Gall*, 552 U.S. at 51. To be substantively reasonable, the sentencing court is required to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" or need for the sentence. 18 U.S.C. § 3553(a). A sentence may be

substantively unreasonable if the court fails to consider relevant sentencing factors or gives an unreasonable amount of weight to any pertinent factor. *United States v. Jones*, 489 F.3d 243, 252 (6th Cir. 2007). "The essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 623-33 (6th Cir. 2010).

Defendant does not raise a procedural unreasonableness claim. That is, Defendant does *not* contend that the district court failed to address his argument for a variance.[3] Thus, our focus in this appeal is whether the district court "imposed a sentence that was greater than necessary" by applying the enhancement and not granting a variance from the effect of that enhancement.

We find that the sentence imposed was substantively reasonable and appropriate given the totality of the circumstances, the advisory Guidelines, and the requirements of § 3553. The court discussed in seriatim all of the factors contained in § 3553(a), heard argument, and explained his sentence. In response to Defendant's request for a variance, the court explained in detail why a longer sentence was needed in light of the offense conduct; Defendant's lengthy criminal history, much of which involved firearms; and his recidivism. *Cf. United States v. Berkey*, 406 F. App'x 938, 939, 941-42 (6th Cir. 2011) (upholding the defendant's four-level enhancement under U.S.S.G. § 2K2.1(b)(6), despite the court's initial statement that the Guidelines range was "a little too high," after considering the § 3553(a) factors such as the defendant's multiple prior drug convictions and the "apparent absence of any deterrent effect from his prior punishments").

---

[3]Had he, we would review this challenge for plain error. When asked the *Bostic* [*United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004)] question, both parties responded negatively. *See United States v. Simmons*, 587 F.3d 348, 353-58 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 2116 (2010).

While the court did not use the term "variance" in its remarks, its comments were clearly in response to Defendant's request for one. Defendant conceded that the enhancement was proper, so the application of the enhancement can only be read as responding to Defendant's variance claim. The court clearly expressed its belief that accessory after the fact was itself a very serious crime, in addition to the § 922(g) charge. Coupled with Defendant's lengthy criminal history and repeated criminal conduct, the court concluded that all of the § 3553(a) factors compelled it to conclude a longer sentence was necessary. On this record, we cannot say the sentence was substantively unreasonable. *Cf. Madden*, 515 F.3d at 612-13 (holding that the district court did not err in denying the defendant's request for a variance where the court properly noted that the Guidelines were advisory, discussed the § 3553(a) factors, and explained its reasons for the sentence imposed within the Guidelines range), *see also United States v. Mapp*, 311 F. App'x 738, 740 (6th Cir. 2008) (per curiam) (holding that the defendant's variance argument was essentially a challenge to the substantive reasonableness of the sentence and therefore reviewed under the abuse-of-discretion standard).

### III. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.