**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 12a0160n.06**

**No. 10-2636**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

**Feb 08, 2012**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| DONALD JAMES HOLLIN, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before:  COOK, WHITE, and DONALD, Circuit Judges.

**BERNICE B. DONALD**, **Circuit Judge.**  Defendant-Appellant Donald James Hollin was convicted of several drug offenses in the Western District of Michigan.  Because Hollin had multiple prior felony drug convictions, the district court sentenced him to life imprisonment on two of the counts.  Hollin now appeals his conviction and sentence.  In particular, Hollin challenges (1) the district court's denial of a motion to suppress evidence seized pursuant to a search warrant; (2) the district court's decision to limit cross-examination of a Government witness who identified fingerprints on seized items as belonging to Hollin; and (3) the constitutionality of the life sentence. For the reasons assigned herein, we AFFIRM.

I.

In June 2009, officers with the Kalamazoo Valley Enforcement Team and the Drug Enforcement Administration began an investigation of Arthur Anderson for suspicion of drug trafficking in Kalamazoo, Michigan. On June 4, they began surveiling Anderson and followed him from Kalamazoo to T&D Motors in Wyoming, Michigan. At T&D Motors, Anderson met Hollin, who entered Anderson's vehicle. The officers followed Anderson and Hollin to 2623 Walden Wood in Wyoming, Michigan ("the Apartment"). Hollin entered the Apartment but quickly exited it and reentered the car. Hollin and Anderson then returned to T&D Motors.

The officers continued to follow Anderson as he left Wyoming and headed back toward Kalamazoo. When Anderson entered Kalamazoo County, the officers pulled him over for displaying an improper license plate. During the stop of Anderson's vehicle, the officers employed a drug-sniffing dog. The dog indicated that drugs were located in the driver's side door. The officers searched the door, and in the storage compartment they found a substance resembling heroin. The officers sent the substance to the Kalamazoo Department of Public Safety Crime Laboratory (the "Crime Lab"), which confirmed that the substance was 49.95 grams of heroin.

After the officers searched Anderson's car and discovered the heroin, they returned to the Apartment. When they arrived they met Tene Redd outside the Apartment. Redd, who lived in the Apartment, informed the officers that Hollin was her children's godfather. She told the officers that Hollin had a key to the Apartment, could come and go as he pleased, and had recently been in the

Apartment. The officers asked Redd whether Hollin had ever asked her to store anything for him, and she responded that Hollin had stored a three foot by four foot box in the Apartment approximately one month prior. Redd stated that she did not know what the box contained.

The officers asked Redd whether they could search the Apartment to ensure no one else was inside. Redd consented to the search. When Redd entered the Apartment she went to the bedroom closet and reached for a shopping bag. Asked by the officers about her action, Redd responded that she was showing them that no one was in the closet.

As the officers proceeded through Redd's bedroom they noticed a small number of marijuana roaches, which Redd admitted was for her personal use. The officers asked Redd whether they could search the rest of the Apartment for narcotics, but she would not consent, saying she had to go pick up her children. The officers then secured the Apartment while they obtained a search warrant.

After the encounter with Redd at the Apartment, Officer Michael Ferguson sought a warrant from the Michigan Eighth Judicial Court to search the Apartment. Ferguson swore to an affidavit that summarized the officers' encounter with Redd and the walk-through search of the Apartment to which Redd consented. Ferguson then listed four nuggets of information provided by Redd to another officer on the scene:

1. Donald Hollin has never spent the night at her apartment.
2. Approximately one month ago, Reed [sic] allowed Donald Hollin to store a 3 foot by 4 foot box at her apartment. Reed [sic] did not see where he put the box and did not know what was inside it.

> 3.     Since the agreement to store the box, Donald Hollin has been in possession of keys to the apartment and can come and go as he pleases.
>
> 4.     Donald Hollin may be bringing things into the apartment without her knowledge.

Unfortunately, the affidavit did not mention the earlier observations of Hollin and Anderson, Hollin's visit to the Apartment, or the seizure of cocaine from Anderson's vehicle.

Ferguson then recited a list of general characteristics of drug trafficking based on his personal experience in drug investigations. From this information, Ferguson asserted that there was "probable cause to believe that marijuana can be found at [the Apartment] and that the occupant is partaking in ongoing violations of the controlled substance act." The affidavit listed the items to be seized as:

> 1.     Any forms of marijuana and any other controlled substances.
>
> 2.     Any tools, equipment, records, notes, tabulations and U.S. currency believed to be evidence and proceeds in manufacturing and/or trafficking of controlled substances.
>
> 3.     Any paper, bills, receipts showing residency or control of the above premises.
>
> 4.     Any and all firearms located in the aforementioned premises.

The magistrate issued the warrant to search the Apartment for the above-listed items.

When the officers executed the search warrant, they examined the shopping bag for which Redd had reached. Inside they found a blender box containing a substance believed to be heroin. The substance was sent to the Crime Lab, which confirmed it to be 1,532 grams of heroin. Officers

also seized a box of sandwich bags, a digital scale, and some latex gloves from the closet as well as the marijuana roaches in the bedroom and some documents from the living room.

In the Second Superseding Indictment filed April 15, 2010, Hollin was charged with one count of Conspiracy to Distribute and to Possess with Intent to Distribute Heroin and Cocaine after two or more felony drug convictions, 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(I), (b)(1)(B)(ii), one count of Possession with Intent to Distribute Heroin, 21 U.S.C. § 841(a)(1), (b)(1)(A)(I), and one count of Distribution of Heroin, 21 U.S.C. § 841(a)(1), (b)(1)(C). On April 27, 2010, Hollin filed a motion to suppress the evidence seized from the Apartment during the search on the ground that the search warrant did not show probable cause. On June 25, 2010, the district court denied Hollin's motion to suppress. The district court found that the affidavit supporting the warrant demonstrated probable cause to search the Apartment for two reasons: (1) the presence of the marijuana roaches supported a suspicion that other drugs would be present; and (2) the statements by Redd suggested that additional contraband would be uncovered during a search.

On July 19, 2010, the case proceeded to trial. The Government produced two witnesses to testify regarding fingerprint evidence. David Thomas testified about how he lifted and processed fingerprints found on the items seized from the Apartment, including fingerprints located on the blender box, plastic bags, and a battery from the postal scale. Exhibits of these fingerprints were admitted without objection. The Government also called Marty Johnson, who identified the fingerprints found on the items seized from the Apartment as Hollin's. During the cross-examination of Johnson, Hollin's counsel began asking questions about the reliability of Johnson's report and

when his report was placed in the system that generates the master police report. The Government objected to this questioning, and the district court sustained the objection, limiting Hollin's line of questioning to the subject of what Johnson did and whether he recorded what he did for purposes of memory refreshment.

On July 22, 2010, the jury returned a verdict finding Hollin guilty of conspiracy involving one kilogram or more of heroin; possession with intent to distribute one kilogram or more of heroin; and distribution of heroin. The jury found Hollin not guilty of conspiracy involving cocaine.

On November 18, 2010, the district court sentenced Hollin to life imprisonment on Counts 1 and 2 and a consecutive sentence of 360 months on Count 3. Hollin also received a ten-year term of supervised release for Counts 1 and 2, and a six-year term of supervised release for Count 3. On December 1, 2010, Hollin timely filed a Notice of Appeal.

II.

The district court denied Hollin's motion to suppress because it found that Ferguson's affidavit showed probable cause to search the Apartment. It alternatively held that even if the search warrant was defective, the good-faith exception to the exclusionary rule would nonetheless permit the introduction of the evidence discovered during the search. Because we find the good faith exception applicable in this case, we do not reach the question whether Ferguson's affidavit showed probable cause to search the Apartment.

The Supreme Court has identified an exception to the exclusionary rule in circumstances where an officer acts in good faith when executing a warrant she reasonably believes to be valid. *United States v. Leon*, 468 U.S. 897 (1984). Recognizing that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates," the Court in *Leon* concluded that the "marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Id.* at 916, 922.

There are circumstances, however, where the good faith exception does not apply:

1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; 2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; 3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and 4) when the warrant is so facially deficient that it cannot be reasonably presumed to be valid.

*United States v. Thomas*, 605 F.3d 300, 311 (6th Cir. 2010) (citing *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*, 468 U.S. at 914-23)).

Hollin focuses on the third exception to the good faith exception. "Under this exception, the executing officer must have had 'no reasonable grounds for believing that the warrant was properly issued.'" *United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008) (quoting *United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003) (citing *Leon*, 468 U.S. at 923)). The inquiry is "whether the faceless, nameless 'reasonably well-trained officer' in the field, upon looking at this warrant,

would have realized that the search described . . . did not match the probable cause described . . . and therefore the search was illegal, despite the magistrate's decision to the contrary." *Id.*

Hollin first argues that the third exception to *Leon* applies because of "[t]he failure of the affiant to tell the magistrate what he really was requesting." Because the subjective intent of the officer is irrelevant, this argument is without merit. *See Whren v. United States*, 517 U.S. 806 (1996); *United States v. Sprague*, 370 F. App'x 638 (6th Cir. 2010).

Hollin also insists the affidavit supporting the search warrant is "bare bones" because "the available facts did not support any reasonable belief that additional contraband or evidence of a crime would be found in the apartment." Bare bones affidavits are those that contain only "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge. . . ." *United States v. Weaver*, 99 F.3d 1372, 1380 (6th Cir. 1998). Such affidavits fall within the third exception to the *Leon* exception because they are "lacking in indicia of probable cause." *Laughton*, 409 F.3d at 748. The determination whether an objectively reasonable officer would recognize that an affidavit is bare bones is restricted to the information included in the four corners of the affidavit. *Id.* at 751-52.

The affidavit's mention of the marijuana roaches in the Apartment defeats Hollin's argument that the affidavit was a bare bones affidavit. While the inclusion of Redd's statements and the boilerplate paragraphs on generic drug trafficking situations suggest only a suspicion of drug trafficking, the marijuana roaches offered a factual basis to believe the Apartment contained

contraband. Thus, while the affidavit was bare bones with regard to drug *trafficking*, there was factual support to believe that marijuana could be found in the Apartment. Hollin's argument that Ferguson's affidavit was bare bones in all respects is not persuasive.

Finally, Hollin contends that the good-faith exception does not apply because Ferguson, the affiant for the warrant, executed it, precluding him from being able to claim good-faith reliance on any deficiencies. Hollin directs the Court's attention to *Groh v. Ramirez*, 540 U.S. 551 (2004). In *Groh*, the Supreme Court held that a warrant was invalid because it did not describe with particularity the things to be seized . The Court also rejected an officer's argument that he reasonably relied on the warrant. "[B]ecause petitioner himself prepared the invalid warrant," the Court noted, "he may not argue that he reasonably relied on the Magistrate's assurance that the warrant contained an adequate description of the things to be seized and was therefore valid." *Id.* at 564. Hollin insists that since Ferguson prepared the affidavit, obtained the warrant, and executed it, he, like the officer in *Groh*, cannot argue any error was made in good faith and reasonable reliance on the magistrate's assurance of probable cause.

Hollin also points to *Hodson*, 543 F.3d 286, where the Sixth Circuit found that *Leon* did not apply when an affidavit established probable cause for evidence of child molestation but the warrant described a search for evidence of child pornography. The court explained that

> the only reason that the officer executing the search warrant in this case, Detective Pickrell, did not recognize the insufficiency of the warrant was that Detective Pickrell was also the investigating officer who prepared the affidavit, obtained the warrant, and had specialized, subjective knowledge about these kinds of criminal offenses,

> this search and this case. But, as the Supreme Court has made clear, such subjective knowledge is not sufficient to satisfy a finding of objective good faith.

*Hodson*, 543 F.3d at 293 (citing *Groh*, 540 U.S. at 564).

*Groh* and *Hodson* are distinguishable from this case. Both involved a disconnect between the probable cause provided in the affidavit and the items to be searched. That situation is not present here. While it was objectively unreasonable for the officer in *Groh* to rely on a warrant without a particularized description of what was to be searched, and it was unreasonable for the officer in *Hodson* to rely on a warrant that described a search for one crime when the affidavit described probable cause for a different crime, it was not objectively unreasonable for the officers in this case to think they had probable cause to search for marijuana based on Ferguson's affidavit because the affidavit explained that marijuana roaches were discovered in the Apartment.

Based on the affidavit, the officers arguably had no objective basis to believe that there was probable cause to search the Apartment for evidence of drug trafficking. The discovery of the marijuana roaches in plain view provided a basis to believe there was probable cause to search the Apartment. Even if, *arguendo*, probable cause was ultimately lacking, it is unlikely that "a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision." *Leon*, 468 U.S. at 923 n.23. Suppressing this evidence would not further the exclusionary rule's purpose of deterring police misconduct. Because the *Leon* exception applies here, the district court did not err in denying Hollin's motion to suppress and allowing the introduction of the evidence discovered during the search of the Apartment.

III.

Hollin's second assignment of error is that the district court improperly limited his counsel's cross-examination of the government's fingerprint witness. A limitation on cross-examination that violates the Confrontation Clause is subject to harmless error analysis. *United States v. Williams*, 431 F. App'x 404, 408 (6th Cir. 2011). Whether an error is harmless depends on several factors, including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdell*, 475 U.S. 673, 684 (1986).

A review of the trial transcript reveals that Hollin's counsel continued to ask questions regarding the witness's report and when it was placed in the master police report, and the witness answered these questions. Therefore, to the extent the district court erred in sustaining the government's objection to the cross-examination, it was harmless error because it did not substantively impact Hollin's ability to elicit information from the witness.

IV.

Hollin's final argument is that his life sentence pursuant to 21 U.S.C. § 841(b)(1)(A) is unconstitutional. We have repeatedly held that § 841(b)(1)(A) is constitutional. *See United States*

*v. Senter*, 424 F. App'x 443 (6th Cir. 2011); *United States v. Wettstain*, 618 F.3d 577 (6th Cir. 2010).

Hollin's argument is therefore without merit.

V.

For the reasons assigned above, we AFFIRM Hollin's conviction and sentence.